Andrew L. Packard (State Bar No. 168890)
Email: andrew@packardlawoffices.com
LAW OFFICES OF ANDREW L. PACKARD
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Phone: (707) 782-4060

Erina Kwon (Bar No. 235079)
Email: erina@lawaterkeeper.org
Benjamin Harris (Bar No. 313193)
Email: ben@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 E 2nd Street, Suite 250
Los Angeles, CA 90012
Phone: (310) 394-6162

Attorneys for Plaintiff
LOS ANGELES WATERKEEPER

JS-6

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>IT ASSET PARTNERS, INC., a California corporation,<br><br>　　　　Defendant. | Case No. 2:25-cv-01475<br><br>**CONSENT DECREE** |

## CONSENT DECREE

1

2     **WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or

3     "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the

4     laws of the State of California, with its main office in Los Angeles, California;

5     **WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and

6     defense of the surface, ground, coastal and ocean waters of Los Angeles County from

7     all sources of pollution and degradation;

8     **WHEREAS**, Defendant IT ASSET PARTNERS, INC. ("Defendant") owns

9     and operates a facility at 8966 Mason Avenue, under Waste Discharger Identification

10    number 4 19I025175 ("Facility");

11    **WHEREAS**, the Facility's industrial activities consist of electronic waste

12    recycling, including dismantling, storage and shipping of waste metals. The Facility

13    is categorized under Standard Industrial Classification ("SIC") Code 5093, covering

14    "Scrap and Waste Materials";

15    **WHEREAS**, storm water discharges associated with industrial activity at the

16    Facility are regulated by the National Pollutant Discharge Elimination System

17    ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board],

18    Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ

19    and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method

20    Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3)

21    Statewide Compliance Options Incentivizing On-Site or Regional Storm Water

22    Capture and Use, at the Facility ("General Permit" or "Permit")[1], and the Federal

23

24          [1] Any references to the "General Permit" or "Permit" herein shall be to the
25    then-effective version, regardless of whether such changes are the result of
      amendments, revisions, reissuance, or similar modification of material terms. Any
26    reference in this Consent Decree to specific sections or subsections of the General
      Permit that are moved, modified, or otherwise changed in a subsequent version of the
27    General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the
      current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current
28    §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

CONSENT DECREE                                              Case No. 2:25-cv-01475

1   Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or

2   "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

3       **WHEREAS**, Defendant's operations at the Facility result in discharges of

4   pollutants into waters of the United States and are regulated by the Clean Water Act

5   Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

6       **WHEREAS**, the General Permit requires all permittees, including Defendant,

7   to comply with, inter alia, the following mandates: (1) develop and implement a

8   storm water pollution prevention plan and a storm water monitoring implementation

9   plan, (2) control pollutant discharges using, as applicable, best available technology

10  economically achievable or best conventional pollutant control technology to prevent

11  or reduce pollutants through the development and application of Best Management

12  Practices, which must be detailed in and timely updated in the SWPPP, (3) reduce

13  and eliminate discharges necessary to comply with any and all applicable Water

14  Quality Standards, and (4) implement a monitoring and reporting program, including

15  the MIP, designed to assess compliance with the Permit;

16      **WHEREAS**, on December 17, 2024, Plaintiff issued a notice of intent to file

17  suit ("60-Day Notice Letter") to Defendant, its registered agent, the Administrator of

18  the United States Environmental Protection Agency ("EPA"), the Executive Director

19  of the State Water Resources Control Board ("State Board"), the Executive Officer of

20  the Los Angeles Regional Water Quality Control Board ("Regional Board"), the

21  Regional Administrator of EPA Region IX, and the Attorney General of the U.S.

22  Department of Justice, alleging violations of the Clean Water Act and the General

23  Permit;

24      **WHEREAS**, on February 21, 2025, LA Waterkeeper filed a complaint against

25  Defendant in the Central District of California ("Court"), Civil Case No. 2:25-cv-

26  01475 ("Complaint");

27      **WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and

28  the Clean Water Act for Defendant's discharges of pollutants into storm drains and

1 surface waters, including the Los Angeles River Reach 6 and ultimately to the Pacific
2 Ocean (collectively, "Receiving Waters");

3     **WHEREAS**, Plaintiff and Defendant (collectively, "Settling Parties" or
4 "Parties") agree that it is in their mutual interest to enter into a Consent Decree
5 setting forth terms and conditions appropriate to resolving the allegations set forth in
6 the 60-Day Notice Letter and Complaint without further proceedings;

7     **WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree
8 shall be made in compliance with all applicable federal, state and local laws, rules
9 and regulations.

10     **NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE**
11 **SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS**
12 **FOLLOWS:**

13     1.     The Court has jurisdiction over the subject matter of this action pursuant
14 to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

15     2.     Venue is appropriate in the Central District Court pursuant to Section
16 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the
17 alleged violations are taking place is located within this District.

18     3.     The Complaint states a claim upon which relief may be granted against
19 Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

20     4.     LA Waterkeeper has standing to bring this action.

21     5.     The Court shall retain jurisdiction over this matter for the purposes of
22 interpreting, modifying, or enforcing the terms and conditions of this Consent Decree
23 and adjudicating all disputes among the Parties that may arise under the provisions of
24 this Consent Decree, for the Term (as defined below) of this Consent Decree
25 including for as long as necessary for the Court to resolve any motion to enforce this
26 Consent Decree, but only regarding issues raised within the Term. The Court shall
27 have the power to enforce this Consent Decree with all available legal and equitable
28 remedies, including contempt.

CONSENT DECREE                                  Case No. 2:25-cv-01475

## I.    OBJECTIVES

6.    It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.    In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, all terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.    AGENCY REVIEW AND DEFINITIONS

### A.    AGENCY REVIEW OF CONSENT DECREE

8.    <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for agency review consistent with <u>40 C.F.R. § 135.5</u>. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.    <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by <u>40 C.F.R. § 135.5</u>, in order to coordinate the Court's calendar with the 45-day review period.

10.    <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

CONSENT DECREE                                    Case No. 2:25-cv-01475

**B.**    **DEFINITIONS**

11.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

a.    "BAT" means the Best Available Technology Economically Achievable.

b.    "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

c.    "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

d.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f.    "Design Storm" means the design storm calculated in accordance with the design storm standards set forth in General Permit for Volume-based BMPs (General Permit § X.H.6.a.) or Flow-based BMPs (General Permit § X.H.6.b.).

g.    "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

h.    "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

i.  "Entry Date" means the day this Consent Decree is approved and entered by the Court.

j.  "Forecasted Rain Event" means a forecasted rain event  with a thirty percent (30%) or greater probability of precipitation above 0.1 inches for the following 24-hour period at least twenty-four (24) hours prior to the rain event as determined by the National Oceanic and Atmospheric Administration (which can be found at http://forecast.weather.gov/) and searching for "91311, Canoga Park, CA USA."

k.  "MIP" means a Monitoring Implementation Plan.

l.  "PPT" means Pollution Prevention Team.

m.  "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

n.  "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

o.  "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

p.  "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

q.  "SWPPP" means a Storm Water Pollution Prevention Plan.

r.  "Term" means the period between the Effective Date and the "Termination Date."

s.  "Termination Date" means the latest of:

i.  June 30 following three (3) years from the Effective Date;

      ii.    June 30 following two (2) years after [an/the] advanced treatment system is fully installed, operational, and optimized, if applicable;

      iii.    seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to June 30 following three (3) years after the Effective Date;

      iv.    seven (7) days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree; or

      v.    seven (7) days from written approval from the State Water Board of either an No Exposure Certification (NEC), or a Notice to Terminate (NOT), following an inspection by the Regional Board or the United States Environmental Protection Agency that confirms compliance with all applicable NEC requirements of the General Permit, or within thirty (30) calendar days after Defendant provides notice to LA Waterkeeper pursuant to Paragraph 16 below and LA Waterkeeper confirms that it agrees with the justification for NEC coverage contained therein.

    t.    "Wet Season" means the period beginning October 1st of any given calendar year and ending June 30th of the following calendar year.

## III. COMMITMENTS OF THE SETTLING PARTIES

### A. STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.    <u>Non-Storm Water Discharge Prohibition.</u> Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13. <u>Current and Additional Best Management Practices.</u> At all times, Defendant shall implement BMPs identified in its SWPPP and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those necessary to comply with: (1) BAT/BCT-level pollutant reductions; and (2) the General Permit's Receiving Water Limitations, which require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards" contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

14. <u>Rain Gauge/Sensor</u>. Defendant shall install and maintain an electronic rain gauge or sensor at the Facility within thirty (30) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree, except in the event of equipment malfunctions caused by something outside of Defendant's control.  In the event of a rain gauge malfunction, Defendant shall use rain data from National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "91311, Canoga Park, CA, USA" for purposes of precipitation quantities and timing.

15. <u>Structural and Non-Structural BMPs for the Facility</u>. As soon as possible but no later than ninety (90) days of the Effective Date, unless otherwise noted, Defendant shall develop and implement the following BMPs at the Facility:

    a. **Repavement or Repair of Deteriorated Asphalt Surfaces.**
    **Phase 1:** On or before **October 1, 2025**, Defendant shall repave or repair the easternmost 50' section of the Facility, running from NE

corner to the SE corner, and including the area immediately around DP#1;

**Phase 2:** On or before **October 1, 2026**, Defendant shall repave or repair the southernmost 50' section of the Facility, running from SW corner to the SE corner, and including the area around DP#2;

b. **Replacement/Recoating of all Galvanized Roof Surfaces.** On or before **October 1, 2025**, Defendants shall replace or recoat all galvanized roof surfaces at the Facility;

c. **Enhanced Facility-Wide Sweeping Program.** Defendants shall develop and implement an enhanced sweeping program using a regenerative air or vacuum sweeper certified by the South Coast Air Quality Management District with the capacity to collect and retain PM-10 (10 μm) particles on all paved areas at least once per month outside of the Wet Season, once per week during the Wet Season, and within twenty-four (24) hours prior to a Forecasted Rain Event. For all Facility areas that cannot be reached by the sweeper, the enhanced sweeping program shall include hand sweeping and vacuuming with a back-pack-style EPA vacuum daily during the Wet Season;

d. **Improved Filtration Media.** Defendant shall obtain and install new metals-absorbing wattles (biochar or other equivalent media) at all Discharge Points and along all flow paths leading to DP#1. These filtration media shall be configured to achieve maximum contact time with storm water prior to discharge, *i.e.,* in multiple layers and/or overlapping formations, and replace before the start of each Wet Season and no later than September 15th of each year during the Term of this Consent Decree;

CONSENT DECREE                                                    Case No. 2:25-cv-01475

e.  **Formal Pre-Rain Protocol for All Forecasted Rain Events.**
During each Wet Season, as necessary, replace the
wattles/filters/socks when degraded or ineffective, including
without limitation when there are rips, tears or other visual
damage, and/or sampling data demonstrating the
wattles/filters/socks are not sufficiently reducing pollutant
concentrations;

f.  Within twenty-four (24) hours prior to a Forecasted Rain Event,
inspect all wattles/filters/socks deployed at the Facility;

g.  Within twenty-four (24) hours prior to a Forecasted Rain Event,
remove any exposed waste material and cover all industrial
materials, debris and scrap bins, and trash cans with tarps, lids, or
other coverings sufficient to prevent exposure to rainfall,
including without limitation those stored outside and where roof
protection is inadequate, or otherwise move them into a covered
structure adequate to prevent exposure to rainfall;

h.  The date and time of all such inspections shall be documented and
signed by the inspector, with such logs kept with and incorporated
in the Facility SWPPP at all times during the Term of this Consent
Decree;

i.  **Improved Operational and Maintenance BMPs.**  Defendants
shall develop and implement an equipment and vehicle
maintenance program that ensures that:

    i.  no maintenance activities occur outdoors during wet
weather, unless such maintenance is required for safe
operation of the Facility, *e.g.*, the forklift breaks down in a
location that prevents ingress/egress;

ii.  maintenance activities occur only in designated work areas or beneath covered maintenance areas;

iii.  drip pans and open waste containers are never left unattended, and that all wastes are promptly transferred to their proper storage units no later than the close of each business day; and,

iv.  when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground.

j.  **Compliance Confirmation to Plaintiff.**  Within seven (7) days of each of the above BMPs being fully implemented, Defendant shall confirm to LA Waterkeeper in writing, with representative photographs, that such BMP has been implemented as set forth above.

**B.    NO EXPOSURE CERTIFICATE**

16.    If Defendant intends to apply for an NEC for the Facility, it shall confirm to LA Waterkeeper in writing, at least fifteen (15) days prior to submitting the application to the Regional Board, that it has complied with all requirements set forth in the General Permit, and shall provide LA Waterkeeper with the NEC Checklist pursuant to General Permit § XVII.F.2 demonstrating that none of the following materials or activities are, or will be in the foreseeable future, exposed to precipitation:

a.    Using, storing or cleaning industrial machinery or equipment, and areas where residuals from using, storing or cleaning industrial machinery or equipment remain and are exposed;

b.    Materials or residuals on the ground or in storm water inlets from spills/leaks;

CONSENT DECREE                                    Case No. 2:25-cv-01475

c.     Materials from past industrial activity;

d.     Material handling equipment (except adequately maintained vehicles);

e.     Materials or products during loading/unloading or transporting activities;

f.     Materials or products stored outdoors (except final products intended for outside use, e.g., new cars, where exposure to storm water does not result in the discharge or pollutants);

g.     Materials contained in open, deteriorated or leaking storage drums, barrels, tanks, and similar containers;

h.     Materials or products handled/stored on roads or railways owned or maintained by the Discharger;

i.     Waste material (except waste in covered, non-leaking containers, e.g., dumpsters);

j.     Application or disposal or processed wastewater (unless already covered by a NPDES permit); and,

k.     Particulate matter or visible deposits of residuals from roof stacks/vents evident in the storm water outflow.

**C.     SAMPLING AT THE FACILITY**

17.     Enhanced Monitoring. Defendant shall develop a monitoring program consistent with the General Permit. During the Term, Defendant shall collect samples of storm water discharge from each Discharge Point from all Qualifying Storm Events from at least four (4) Qualifying Storm Events, including the first two (2) Qualifying Storm Events during the first half of the Reporting Year and the first two (2) Qualifying Storm Events during the second half of the Reporting Year. If, due to lack of Qualifying Storm Events, fewer than two Qualifying Storm Events are collected in the first half of a Reporting Year, that shall be compensated for by collecting an additional sample from an additional Qualifying Storm Event during the

12

second half of a Reporting Year, until a total of four samples are collected for any Reporting Year occurring during the term of this Agreement. Such sampling shall take place as soon as possible within the four (4) hour period required by the General Permit § XI.B.5. If a substantial rain event occurs in which Defendant is unable to sample because insufficient discharge occurs, then Defendant shall document the inability to sample by taking photographs during the rain event at each Discharge Point. Defendant shall submit such photographs to LA Waterkeeper by email, along with rain gauge/sensor data for the date of such rain event, within seven (7) days of a written request for such records by LA Waterkeeper.

18.     Sampling Parameters. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should Defendant intend to conduct sampling for any additional parameters that are listed in 40 C.F.R. § 131.38 and/or in the General Permit for any reason, including without limitation as a result of changed operations, a revised pollutant source assessment, or a new mandate from a regulatory agency, such parameter shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below). Defendant shall immediately notify LA Waterkeeper of its intent to conduct sampling for any such additional parameters and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes within ten (10) days of such notification.

19.     Laboratory and Holding Time. Except for pH samples, Defendant shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

20.     Detection Limit. Defendant shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

CONSENT DECREE                                             Case No. 2:25-cv-01475

21.    <u>Reporting</u>. Defendant shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit, and shall provide copies to LA Waterkeeper within ten (10) days of receiving the laboratory report with the results.

**D.    REDUCTION OF POLLUTANTS IN DISCHARGES**

22.    <u>Table 1 Numeric Limits</u>. Defendant shall develop and implement BMPs for storm water discharges from the Facility that reduce pollutant concentrations to levels below those in Table 1:

**TABLE 1[2]**

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| Total Suspended Solids (TSS) | 400 mg/L (instantaneous); 100 mg/L (annual) | NAL |
| Oil & Grease (O&G) | 25 mg/L (instantaneous); 15 mg/L (annual) | NAL |
| pH | 6.5-8.5 SU (instantaneous) | Basin Plan |
| Copper | 0.06749 mg/L(instantaneous) | NAL/NEL |
| Iron | 1.0 mg/L (annual) | NAL |
| Zinc | 0.159 mg/L (instantaneous) | NEL |

23.    <u>Table 1 Exceedances</u>. An "Exceedance" of Table 1 is defined as follows: where the concentration of any pollutant in any storm water sample from the Facility exceeds the applicable numeric limit contained in Table 1.

24.    <u>Action Plan</u>. As of the Effective Date, and for the remainder of the Term, if (a) Defendant has an unauthorized non-storm water discharge in violation of

---

[2] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for TSS is either increased to 110 mg/L or decreased to 90 mg/L, such new NAL, and not 100 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for TSS being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

Paragraph 12, or (b) storm water sample results demonstrate an Exceedance as defined above; or (c) after an advanced treatment system is fully installed, operational, and optimized, if ever, the advanced treatment system discharges untreated storm water in smaller than a Design Storm (each, a "Trigger Event"), Defendant shall prepare and submit to LA Waterkeeper a plan to address the conditions causing the Trigger event ("Action Plan"). The complete Action Plan shall be submitted to LA Waterkeeper within thirty (30) days of the applicable Trigger Event.  If there are multiple Trigger Events in any given six-month Reporting Period, Defendant may elect to submit a consolidated Action Plan addressing all such Trigger Events, in which case the Action Plan shall be due on the last day of the applicable Reporting Period (December 31st and June 30th).

     a.    <u>Action Plan Requirements</u>. Each Action Plan shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the numeric limit(s), the applicable discharge in smaller than a Design Storm, and/or the applicable unauthorized non-storm water discharge; (2) an assessment of the cause of each Trigger Event; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), the Design Storm requirement, and/or unauthorized non-storm water discharge prohibition, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within seven (7) days of each of the BMPs set forth in the Action Plan being implemented, Defendant shall confirm to LA Waterkeeper in

writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

b.  Action Plan Proposed BMPs. The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

   i.  Hydrologic Controls. Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing on or off site other than through the engineered storm water conveyance or retention systems or treatment facilities.

   ii.  Sweeping. The increased/more frequent use of better sweepers and manual sweeping in otherwise inaccessible areas.

   iii.  Treatment Systems. Installing an advanced storm water treatment system, or making changes to the components, operation and/or maintenance protocols for such system, to provide effective filtration treatment of storm water prior to discharge.

   iv.  Evaluation of Existing BMPs.  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

   v.  Low-Zinc Tires.  Auditing all vehicles, including the forklift fleet, immediately and on a quarterly basis thereafter, to evaluate whether replacement of tires is warranted; if so, replace all tires with low-zinc tires.

c.  Action Plan Review. LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving LA Waterkeeper's

16

1      proposed revisions to an Action Plan, Defendant shall consider each of

2      LA Waterkeeper's recommended revisions and accept them or justify in

3      writing why any comment is not incorporated. Action Plan(s) developed

4      and implemented pursuant to this Consent Decree are an obligation of

5      this Consent Decree. Any disputes as to the adequacy of an Action Plan

6      shall be resolved pursuant to the dispute resolution provisions of this

7      Consent Decree, set out in Section IV below. Disputes regarding the

8      adequacy of a particular BMP shall not impact the schedule for

9      implementing any other BMP set forth in the Action Plan.

10      d.    Defendant shall revise the then-current SWPPP to reflect the changes

11      required by the Action Plan, as set forth in Paragraph 29 below.

12      **E.**   **VISUAL OBSERVATIONS**

13      25.   <u>Storm Water Discharge Observations</u>. During the Term, appropriately

14  trained staff of Defendant shall conduct visual observations during the Facility's

15  operating hours during every rain event. Such inspections shall comply with all

16  requirements of Section XI.A.2 of the General Permit.

17      26.   <u>Monthly Visual Observations</u>. During the Term, appropriately trained

18  staff of Defendant shall conduct monthly visual observations of the Facility including

19  outfalls, Discharge Points(s), outdoor industrial equipment and storage areas, outdoor

20  industrial activities areas, BMPs, and all other potential sources of industrial

21  pollutants. Such inspections shall comply with all requirements of Section XI.A.1 of

22  the General Permit. All Discharge Points shall also be inspected for accumulation of

23  dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and

24  other materials associated with operations at the Facility. During the Wet Season,

25  such inspections shall further include observations of all storm water BMPs that are

26  used only during the Wet Season at the Facility to ensure that operational BMPs are

27  being implemented, structural BMPs are in good condition or working order, and that

28  BMPs have been effective in producing clean conditions at the Facility. Such

17

1    inspections shall further include observation as to whether there are any non-storm

2    water discharges from the Facility.

3        27.    Visual Observations Records. Defendant shall maintain observation

4    records, including photographs, to document compliance with Paragraphs 25 and 26.

5    Such records shall include, but not be limited to, the persons who completed the

6    inspection, the date of the inspection, and notes sufficient to describe the completed

7    activity and all observations thereof, including but not limited to: (i) whether BMPs

8    are in a proper, working condition; (ii) whether any repair, replacement, or operation

9    and maintenance is needed for any BMPs; (iii) other conditions that have the

10   potential to lead to pollutant loading in storm water discharges; and (iv) photographs

11   of all the foregoing.  Defendant shall provide LA Waterkeeper with a copy of those

12   records within seven (7) days of receipt of a written request from LA Waterkeeper for

13   those records.

14       **F.    TRAINING AND PLANS**

15       28.    Employee Training Program. Within ninety (90) days of the Effective

16   Date, Defendant shall develop and implement an improved employee training

17   program that meets the following requirements and ensures (1) that there is a

18   sufficient number of employees at the Facility designated to achieve compliance with

19   the General Permit and this Consent Decree ("Designated Employees"), and (2) that

20   these Designated Employees are properly trained to perform the activities required by

21   the General Permit and this Consent Decree ("Training Program"):

22       a.    Materials. Training materials should include, at minimum, a detailed

23           Training Manual or Standard Operating Procedure, including drawings

24           and diagrams where appropriate, for reference and use by Defendant's

25           personnel to ensure effective implementation of all BMPs at the Facility;

26       b.    Language. The training and training materials shall be available and

27           offered in the language(s) in which relevant employees are fluent. If

28           necessary, Defendant shall provide a translator or translators at all

trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

c.    Training Frequency. Training shall be provided by a QISP familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

d.    Sampling Training. Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and timely submitted to an ELAP- certified laboratory;

e.    Visual Observation Training. Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

f.    Non-Storm Water Discharge Training. Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g.    Employees. All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date; and

h.    Records. Defendant shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with

CONSENT DECREE                                          Case No. 2:25-cv-01475

1  a copy of these records within seven (7) days of receipt of a written

2  request.

3  29.  SWPPP Revisions.

4  a.  Initial SWPPP Revisions. Defendant shall amend the Facility's SWPPP

5  to incorporate the requirements in this Consent Decree and comply with

6  the General Permit and submit the complete, updated SWPPP to LA

7  Waterkeeper within sixty (60) days of the Effective Date for LA

8  Waterkeeper's review and comment.  The complete, updated SWPPP

9  shall contain, at a minimum, the following elements:

10  i.  A revised pollutant source assessment, including all elements

11  required by Section X.G of the General Permit as well as

12  assessments of the potential for the Facility's storm water

13  discharges to contain pollutants for which the Receiving Waters

14  are 303(d) listed and/or have Total Maximum Daily Loads;

15  ii.  A detailed narrative description and assessment of each industrial

16  activity with the potential to impact storm water quality occurring

17  at the Facility as required by Section X.G of the General Permit;

18  iii.  Descriptions of all BMPs in accordance with Section X.H.4 of the

19  General Permit, including without limitation BMPs required by

20  this Consent Decree;

21  iv.  A set of site maps that comply with Section X.E of the General

22  Permit and provisions of this Consent Decree, including

23  accurately depicting the different drainage areas and flows;

24  v.  A MIP as required by Sections XI and X.I of the General Permit;

25  vi.  A designation (by position/title) of employees responsible for

26  carrying out storm water management, monitoring, sampling and

27  SWPPP implementation, e.g., visual inspection of each specific

28  area, monitoring each specific BMP, sampling, etc.; and

20

CONSENT DECREE                          Case No. 2:25-cv-01475

       vii.      An improved Employee Training Program as described above in Paragraph 28.

    b.    <u>Additional SWPPP Revisions</u>.

       i.      Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

       ii.     Within thirty (30) days after any changes in industrial activities or sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

    c.    <u>Review of SWPPP</u>.  For any SWPPP updates pursuant to Paragraphs 28.a and 28b, LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete SWPPP to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the

dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the revised SWPPP to SMARTS.

### G. COMPLIANCE MONITORING AND REPORTING

30.    LA Waterkeeper may conduct one annual site inspection ("Site Inspection") during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding an additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with at least forty-eight (48) hours' notice prior to a Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 56. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

31.    <u>Document Provision</u>. During the Term, Defendant shall notify and submit documents to LA Waterkeeper as follows:

a.    Defendant shall copy LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 56, on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality.

b.    Within five (5) business days of receipt by Defendant, send to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 56, any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality.

32.    <u>Compliance Monitoring</u>. Defendant shall partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree during the Term by paying Fifteen Thousand Dollars ($15,000.00) in two installments. The first installment of Ten Thousand Dollars ($10,000.00) due within ninety (90) days of the Entry Date, and the second installment of Five Thousand Dollars ($5,000.00) due within one year from the first payment, provided the Consent Decree has not been terminated.  In the event that, pursuant to Paragraph 30, there is an additional Site Inspection in a given year to resolve a dispute, Defendant shall reimburse LA Waterkeeper an additional Three Thousand Dollars ($3,000.00) during such year, within thirty (30) days after any additional Site Inspection. Payments pursuant to this Paragraph shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street, Suite 250, Los Angeles, CA 90012. Please include the Facility's name and WDID on the payment. Failure to

1    submit payment as required under this Paragraph will constitute breach of the

2    Consent Decree.

3          **H.    ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND**

4                  **COSTS, MISSED DEADLINES, AND INTEREST**

5          33.    Environmentally Beneficial Project. To fund environmentally beneficial

6    project activities that will reduce or mitigate the impacts of storm water pollution

7    from industrial activities occurring in the Los Angeles River Reach 6 and ultimately

8    to the Pacific Ocean, Defendant shall make a payment totaling Twenty-five Thousand

9    Dollars ($25,000.00) to the Rose Foundation for Communities and the Environment

10   made within ninety (90) days of the Entry Date, payable to Rose Foundation for

11   Communities and the Environment and sent via overnight mail to Attn: Jodene

12   Isaacs, Rose Foundation for Communities and the Environment, 201 4th Street, Suite

13   102, Oakland, CA 94607-4369. Failure to submit payment as required under this

14   Paragraph will constitute breach of the Consent Decree.

15         34.    LA Waterkeeper's Fees and Costs. Defendant shall pay a total of Fifty

16   Five Thousand Dollars ($55,000.00) to LA Waterkeeper to partially reimburse

17   Plaintiff for their investigation fees and costs, expert/consultant fees and costs,

18   reasonable attorneys' fees, and other costs incurred as a result of investigating and

19   filing the lawsuit, and negotiating a resolution of this matter. Payments will be made

20   in two installments with the first payment of Fifty Thousand Dollars ($50,000.00)

21   being due within ten (10) days of the Entry Date, and the second installment of Five

22   Thousand Dollars ($5,000.00) being due within ninety (90) days of the Entry Date.

23   The payment shall be made by check payable to "Los Angeles Waterkeeper" and sent

24   via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior

25   Attorney, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit

26   payment as required under this Paragraph will constitute breach of the Consent

27   Decree.

28

35. <u>Missed Deadlines</u>. In the event that Defendant fails to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, Defendant shall pay a stipulated payment of Five Hundred Dollars ($500) per day. Such stipulated payments shall be made by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 32. Payment shall be sent via overnight mail to Attn: Jodene Isaacs, Rose Foundation for Communities and the Environment, 201 4th Street, Suite 102, Oakland, CA 94607-4369. Defendant agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

36. <u>Interest on Late Payments</u>. Defendant shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate equal to the lower of: (i) 10% per year (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Defendant is current on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on late payments shall be paid by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 32. Payment shall be sent via overnight mail to Rose Foundation for Communities and the Environment, Attn: Jodene Isaacs, Rose Foundation for Communities and the Environment, 201 4th Street, Suite 102, Oakland, CA 94607-4369.

## IV. DISPUTE RESOLUTION

37. <u>Meet and Confer</u>. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in

1 writing of the matter(s) in dispute and of the disputing Party's proposal for resolution.

2 The Parties shall then meet and confer in good faith (either telephonically or in

3 person) within ten (10) days of the date of the notice in an attempt to fully resolve the

4 dispute no later than thirty (30) days from the date of the meet and confer.

5    38.    Settlement Conference. If the Parties cannot resolve the dispute within

6 thirty (30) days from the date of the meet and confer described in Paragraph 36, the

7 Parties agree that the dispute may be submitted for formal resolution by filing a

8 motion before the United States District Court for the Central District of California.

9 The Parties agree to request an expedited hearing schedule on the motion.

10    39.    In resolving any dispute arising from this Consent Decree before the

11 Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to

12 the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. §

13 1365(d), and applicable case law interpreting such provisions, or as otherwise

14 provided for by statute and/or case law.

15 **V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

16    40.    Plaintiff's Waiver and Release of Defendant. In consideration of the

17 above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf

18 and on behalf of its officers and directors, release Defendant, its officers, directors,

19 managers, employees, members, parents, subsidiaries, divisions, affiliates, successors

20 or assigns, agents, attorneys and other representatives, from and waives all claims

21 that were raised in the 60-Day Notice Letter and/or the Complaint up to and including

22 the Entry Date of this Consent Decree.

23    41.    Defendant's Waiver and Release of Plaintiff. In consideration of the

24 above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf

25 and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and

26 each of their successors or assigns, release Plaintiff, its officers and directors, from

27 and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to

28 and including the Entry Date of this Consent Decree.

CONSENT DECREE                                    Case No. 2:25-cv-01475

42.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.    MISCELLANEOUS PROVISIONS

43.     <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

44.     <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

45.     <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

46.     <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

47. <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

48. <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

49. <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

50. <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

51. <u>Diligence</u>. Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

52. <u>Effect of Consent Decree</u>. Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

53. <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

54. <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

55. <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

56. <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

57. <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

/ / /

/ / /

/ / /

CONSENT DECREE                                    Case No. 2:25-cv-01475

If to Plaintiff:
Los Angeles Waterkeeper
Benjamin Harris
Erina Kwon
Madeleine Siegel
360 E 2nd St., Suite 250
Los Angeles, CA 90012
Email: ben@lawaterkeeper.org
Email: erina@lawaterkeeper.org
Email: madeleine@lawaterkeeper.org
Phone: (310) 394-6162

If to Defendant:
IT Asset Partners, Inc.
Bixia Liu
8966 Mason Ave
Chatsworth, CA 91311.
Phone Number: 323-685-4827
Email : Betty.01.2007@gmail.com

With copies to:

LAW OFFICES OF ANDREW L.
PACKARD
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Email:andrew@packardlawoffices.com
Phone: (707) 782-4060

With copies to:

Michel and Associates, PC
W. Lee Smith
180 E. Ocean Blvd. Suite 200
Long Beach, CA 90802
Email: lsmith@michellawyers.com
Phone: (562) 216-4444

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

58.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

CONSENT DECREE                                    Case No. 2:25-cv-01475

1    IN WITNESS WHEREOF, the undersigned have executed this Consent Decree

2  as of the date first set forth below.

3

4  APPROVED AS TO CONTENT

5

6  Dated: ___August 11___, 2025            By: _____

7                                               Bruce Reznik

8                                               Executive Director

9                                               Los Angeles Waterkeeper

10

11  Dated: _____, 2025                By: _____

12

13                                               Bixia Liu

14                                               Chief Financial Officer

15                                               IT Asset Partners, Inc.

15  APPROVED AS TO FORM

16                                     LAW OFFICES OF ANDREW L. PACKARD

17

18  Dated: ___August 11___, 2025            By: _____

19                                               Andrew L. Packard

20                                               Attorney for Plaintiff

21                                               Los Angeles Waterkeeper

22                                     MICHEL & ASSOCIATES, PC

23

24  Dated: _____, 2025                By: _____

25                                               W. Lee Smith

26                                               Attorney for Defendant

27                                               IT Asset Partners, Inc.

28

31

1    IN WITNESS WHEREOF, the undersigned have executed this Consent Decree

2  as of the date first set forth below.

3

4  APPROVED AS TO CONTENT

5

6  Dated: _____, 2025          By: _____

7                                              Bruce Reznik

8                                              Executive Director

9                                              Los Angeles Waterkeeper

10

11  Dated: August 12, 2025               By: _____

12

13                                              Bixia Liu

14                                              Chief Financial Officer
                                              IT Asset Partners, Inc.

15  APPROVED AS TO FORM

16                                      LAW OFFICES OF ANDREW L. PACKARD

17

18  Dated: _____, 2025          By: _____

19                                              Andrew L. Packard

20                                              Attorney for Plaintiff

21                                              Los Angeles Waterkeeper

22                                      MICHEL & ASSOCIATES, PC

23

24  Dated: August 12, 2025               By: _____

25                                              W. Lee Smith

26                                              Attorney for Defendant

27                                              IT Asset Partners, Inc.

28

31

**IT IS SO ORDERED.**

**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated:   October 21, 2025

HONORABLE STEVE KIM
United States Magistrate Judge

CONSENT DECREE                                    Case No. 2:25-cv-01475